Nichols, C. J.
In April, 1914, the plaintiff filed his amended and supplemental petition in the common pleas court of Muskingum county stating among other things that in March, 1914, the council of the city of Zanesville had passed a preliminary resolution directing the public service director to employ a competent engineer to prepare plans, specifications and estimates of cost for the erection and construction of a mechanical filtration plant for purifying the water supply of that city, and for such purpose the public service director was therein authorized to contract to pay such engineer the sum of $2,500.
The petition further says that the resolution contained an emergency clause, declaring the measure to be in the interest of public health and safety for the reason that the water supply of Zanesville was impure and dangerous to health and that the state board of health had, in February, 1914, ordered the city to devise plans for the filtration of the water from the Muskingum river.
The petition makes the claim that the foregoing resolution is a proceeding to acquire, construct, own and operate a public utility and to authorize the making of a contract for the purpose of acquiring, constructing, owning and operating a public utility.
It was, in short, the claim of the petition that under 'Sections 4 and 5 of Article XVIII of the Constitution no valid steps such as were contemplated in the resolution could be taken, and that Section 4227-3, General Code, as amended 103 Ohio Laws, 211, 212, wherein provision was made for *377 the passage of emergency laws by city councils, was unconstitutional and particularly in violation of Section 1/ of Article II of the Constitution of Ohio, in so far as it sought to give immediate operative effect to the resolution and thereby avoid a referendum.
Article XVIII of the Constitution deals with the subject of municipal corporations, Sections 4 and 5 reading:
“Section 4. Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the.product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility.
“Section 5. Any municipality proceeding to acquire, construct, own; lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such ques *378 tion shall be governed by all the provisions of section 8 of this article as to the submission of the question of choosing a charter commission.”
This petition was demurred to. The court of common pleas sustained, the demurrer, the court of appeals affirmed this judgment and error was thereupon prosecuted to this court.
The first inquiry will be directed to the matter of ascertaining if the resolution, wherein it provided for the drawing of plans for the erection of a filtration plant, was the first step toward constructing, and operating a public utility, within the meaning of Sections 4 and 5 of Article XVIII.
The record shows that the city already had established and in operation a complete water system, and that the resolution in question was adopted pursuant to imperative orders from the state board of health to take steps to purify the same. This purification was to be attained by a system of filtration. ' We are constrained to hold that the filtration plant under contemplation was a mere incident to the utility already established and in operation. The filtration process was merely and essentially an improvement made necessary to comply with the order of the state board of health, and was not the original construction of a waterworks plant as a utility of the city.
If every repair, addition or improvement to any utility is to be regarded in the same light as the construction of an entire system, the constitutional provision would be impracticable and cumbersome. Evidently no such result was contemplated, and such a construction is not required. Had it been *379 tne purpose of the constitution framers to require every repair and improvement to come within the terms of Sections 4 and 5 of Article XVIII, it is reasonable to believe that they would have said so.
It is quite evident that these provisions of the constitution were to have no reference to utilities municipally owned and already in operation, but the plain purpose was to enlarge the powers of municipalities in the construction, acquiring, owning, leasing and operating of utilities not already so constructed, acquired, etc., and to facilitate the construction, owning, etc., of utilities by municipalities within the limitations and safeguards of Section 5, Article XVIII.
- If, under the guise of repairing or improving a public utility, any municipality would attempt by resolution to substantially reconstruct a utility, even though municipally owned, and. do this without observing the provisions of Section 5 of Article XVIII, the courts of Ohio, no doubt, would be found open and ready to prohibit any such manifest abuse of the power. However, in the instant case there is no suggestion or intimation of altering or rebuilding the plant already existent, but simply to provide for the purification of the water, and this, not on the initiative, of the council, but at the command of the state board of health speaking with authority.
The question of major importance, however, in this controversy is the one drawing in question the constitutionality of Section 4227-3, General Code, as amended 103 Ohio Laws, 212, providing for the exemption from the referendum of all so-called *380 emergency measures passed by the legislative bodies of municipalities. If this section be unconstitutional, then all laws passed by city and village councils must await the intervening of ninety days before acquiring any operative force, and no emergency, no matter how urgent, whether that of flood, fire, pestilence or impending bankruptcy, can be provided for by immediate legislation.
The disposition of this question requires consideration in its entirety of all of Article II of our Constitution on the subject of the initiative and referendum powers. All of the sections dealing with the subject, with the exception of the particular section in question (1/), deal with it exclusively as a state-wide proposition.
Section If only has to do with the initiative and referendum in its application to municipalities and appears in the following language:
“The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law.’5'
It is the contention of plaintiff in error that this language cannot in any event be interpreted so as to invest legislative bodies of municipalities with the power of declaring any act to be an emergency law, and, further, that the general assembly has no power to invest the subordinate legislative body with any such authority.
The basis of this argument is that since these powers so reserved to the people are to apply to all *381 questions which municipalities may now or hereafter be authorized by law to control by legislative action, and the question of establishing a filtration plant in a municipality being concededly one which municipalities are now authorized by law to control by legislative action, and, further, that in Section 1/ no provision whatever is made for the passage of any law on any subject of an emergency character, therefore an emergency law can under no circumstance be passed by the council of a municipality. It must be conceded, too, that nowhere in the constitution is there any reference to emergency municipal legislation.
An examination of the constitutions of such states of the Federal Union (fourteen in number) that have adopted the initiative and referendum in one form or another discloses the fact that only four — California, Colorado, Oregon and Ohio— have carried it any further than the application to state affairs, and in each of the four states the subject of municipal initiative and referendum is dismissed with scant consideration and substantially in the language of Section 1/ of our Constitution.
There is but one essential difference in the constitutions of the states named and that of Ohio, the difference being that the Ohio constitution provides that the powers shall be exercised in the manner now (as well as hereafter) provided by law.
This difference is to be explained by the fact that Ohio, prior to the adoption of the amendments of 1912, had a referendum provision of legislative creation applicable to municipalities.
*382 When we stop to consider that a large majority of the people of Ohio live in cities and municipalities and that the matters which such municipalities are authorized by law to control by legislative action are of the most vital importance to such citizens, frequently exceeding in interest matters of legislation controlled by the general assembly, it would be a matter of wonder and amazement that, having once reserved such powers to the several municipalities, the constitutional convention would leave unsettled the manner of the exercise of these mighty powers.
In this connection it will' not escape notice that as to the state-wide exercise of the power the constitution goes into the minutest detail, leaving nothing to the action of the general assembly and concluding with the general statement that the provisions of the whole section should be self-executing, thereby putting it beyond the power of an unfriendly legislature to cripple or destroy it.
It fixes the per centum of electors required to initiate both laws and ■ constitutional amendments as well as to the securing of referendums on laws.
It fixes the time within which the people may have opportunity to secure the required number of signatures, determines the qualifications of signers, describes the character of the petitions to be circulated and provides for the form of the affidavit as to the genuineness of the signatures.
It fixes the tribunal where the petitions may he filed and when they may be filed, provides for the manner of protest and hearing thereon, and spe *383 cifically details the duties of the officer with whom such petitions may be filed.
It further provides for the preparation of arguments for and against and explanation as to any proposed law or constitutional amendment.
It fixes the basis upon which the required number of signers shall be determined, and finally provides, in Section 1 d, as to just what laws shall be exempt from the referendum, among others, “emergency laws necessary for the immediate preservation of the public peace, health or safety.”
All of these have reference to state laws and none to the ordinances or resolutions of the councils of municipalities.
After having thus explicitly defined the powers so reserved and the method of their exercise, leaving nothing to be necessarily supplied by any other authority so long as it deals with the subject from a state standpoint, the instrument deals with -the question from a municipal standpoint, devoting but five lines to this important branch, first reserving the powers to municipalities and then, in marked distinction to the state-wide aspect of the question, saying, in effect, we now leave the subject in all its details and the working out of the plan to the general assembly.
In construing constitutional provisions the court must apply the same general rules governing the construction of statutes, mindful, however, of the limitation that in such construction a strict rather than a liberal construction should be had; but after all, the real intention of the body framing the law, be it constitutional convention or general assembly, *384 must be ascertained, if humanly possible, and given full effect.
It is urged by plaintiff in error that the clause “Such powers shall be exercised in the manner now or hereafter provided by law” must be limited to such matters as fixing the per centum of signers and their qualifications, the form of the petition and the method of its circulation, filing, protests, etc., and that it cannot be enlarged into the embracing of the subject of emergency laws.
However this may be, the court finds a clear and unmistakable meaning to be given to Section 1/ which will grant to municipal legislative bodies the same power (but subject to the same limitations) of exempting certain classes of laws from the operation of the referendum, provided the legislature but provides the method and the laws so to be exempted comply as to their character to the provisions of Section Id of Article II.
It will be seen that Section 1 of Article II vests all power of legislation in the legislature except such as is reserved to the people. Sections la and lc of Article II relate to the powers reserved to the people. “The first aforestated power reserved by the people is designated the initiative, * * * the second * * * is designated the referendum.”
When we encounter the “initiative and referendum” powers in Section If of Article II of the Constitution, we are compelled (by rules of interpretation which are well settled) to look to the part of the constitution where the phrase is “defined, limited and explained.” A resort to that source, the very foundation of definition and authority as *385 to the meaning and extent of the term, discloses the fact that the people explicitly defined the limit of the powers; that is to say, Section 1, Article II, provides that the referendum is reserved “except as hereinafter provided.” Section Id, Article II, expressly provides that the power shall not be exercised as to emergency, laws, etc. The conclusion, then, is inevitable that the referendum powers reserved to the people of municipalities is that power as defined and limited by the constitution.
While Section 1/ provides that the powers stated are reserved to the people of the municipalities on all questions which the municipality may now or hereafter be authorized by law to control by legislative action, it must be by the “referendum” — the power, right and privilege of referendum, as defined by the constitution.
The last clause of the section provides merely that the manner of exercising the right or power shall be provided by law, and since Sections 4227-3 and 4227-4 merely provide the manner, it is obviously not only not repugnant to the constitution but wholly consistent with it. The general assembly cannot enlarge the power of the people nor can it diminish it.
Every state that has wholly or partially adopted the initiative and referendum feature of government has recognized the absolute necessity of exempting therefrom laws providing for the current expenses of the state government and its penal and charitable institutions, as well as laws of an emergency nature involving the public health, peace and safety, and, recognizing such necessity, they have *386 uniformly written such exemption in the organic law.
Were we to hold that the general assembly could not vest councils of municipalities with power to provide for the passage of emergency laws, we would be inflicting upon them another and an essentially different sort of a referendum than that provided for in the constitution, and one clearly not contemplated either by its framers or the people who adopted it. The initiative and referendum theory of legislation has been in effect but three years in Ohio, and the principle may be fairly said to be yet on trial. Meanwhile it is the solemn duty of all courts to keep hands off and to avoid giving to the provisions of the constitution on that subject a strained construction which, by reason of its very burdensomeness and unreasonableness, would tend to depopularize it. Such character of construction is as unwarranted as judicial construction tending to weaken or emasculate the theory.

Judgment affirmed.

Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.